**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                             :

WILLIAM RODRIGUEZ,                 :

                             :

                Petitioner,   :    18-CV-11514 (LGS) (OTW)

                             :

        -against-          :    **REPORT AND RECOMMENDATION TO THE**

                             :    **HONORABLE LORNA G. SCHOFIELD**

STEWART T. ECKER,            :

                             :

                Respondent.  :

                             :

                             :
-------------------------------------------------------------x

**I.**      **Introduction**

Petitioner William Rodriguez brings this *habeas corpus* proceeding in accordance with

28 U.S.C. § 2254, seeking to challenge his conviction and sentence in connection with a series of

robberies and burglaries in 2009 and 2013. (ECF 1, Petition for Writ of Habeas Corpus,

hereinafter "Pet."). Specifically, Petitioner committed five different home invasions in late

2009, and was arrested and charged (the "2009 Indictment") after victims from each of the

home invasions identified him. In 2013, while on pretrial release, Petitioner committed a

burglary and was identified and arrested based on DNA evidence found on a pair of wirecutters

found in the burglarized apartment, that matched DNA that had been previously collected from

Petitioner in connection with the 2009 Indictment. After a jury trial on the burglary (the "2013

Indictment"), Petitioner was convicted and sentenced, and is currently serving an

indeterminate sentence of 20 years to life for that conviction. After sentencing, Petitioner also

pled guilty to all counts in the 2009 Indictment. Petitioner was then sentenced to an aggregate,

indeterminate, term of 25 years to life, to be served concurrently with his sentence on the 2013

Indictment.

Here, Petitioner asserts three claims:

1) that his Sixth Amendment right to confrontation was violated when the criminalist testified to results of DNA testing that had not been performed by the criminalist herself ("Ground One");
2) that his counsel's failure to object to that testimony rendered counsel constitutionally ineffective under the Sixth Amendment ("Ground Two"); and
3) that due to the erroneous admission of the DNA testing at trial, he should be allowed to withdraw his guilty plea because he is "actually innocent."[1]

For the reasons set forth below, I respectfully recommend that the Petition be denied.

## II.     Background

### A.  Facts underlying 2009 Indictment

At his guilty plea on April 28, 2014, Petitioner pled guilty to all counts in the 2009 Indictment, which related to five incidents in October and November 2009. Petitioner admitted to forcibly entering five different residences, threatening and assaulting the adults and children in those residences, and stealing property. Petitioner was identified in those incidents through security camera video and eyewitness identification. In connection with his prosecution under the 2009 Indictment, a buccal swab of DNA was obtained from Petitioner in November 2010 (ECF 15-1, Respondent's Memorandum of Law, at 12-13 n.5).[2] Petitioner was subsequently released pending trial.

---

[1] Petitioner seeks, in Ground Three of the Petition, "to deem an atto[r]ney ineffective for pursuing a course of action that would benefit the attorney's client [sic]. . ." ECF 1 at 9. There is no other information that sheds any light on the basis for Ground Three. Reading the Petition as a whole, and giving Petitioner the benefit of the doubt, Ground Three may be an allegation that Petitioner would not have pleaded guilty to the 2009 Indictment but for counsel's advice, and that counsel's advice to plead guilty was constitutionally ineffective because of the perceived Confrontation Clause violation at trial.
[2] Page numbers refer to page numbers in the ECF header.

### B. Petitioner's jury trial on the 2013 Indictment

On or around August 23, 2012, while on pretrial release for the 2009 Indictment, Petitioner broke into an apartment on Hudson Street in Manhattan. The resident returned to her apartment in the early morning of August 24, 2012, and reported the break-in on her return. (ECF 15-1 at 7-8). Later that morning, during the investigation, the resident noticed wire cutters wedged in the cushions of her living room couch. At trial, she testified that she normally kept these wire cutters on her roof or in her office. (ECF 15-1 at 9). The Office of the Chief Medical Examiner ("OCME") took custody of the wire cutters.

In or around October 2012, the wire cutters were swabbed to obtain a DNA sample, and after the DNA profile was uploaded to CODIS, OCME was informed around December 2012 that the DNA profile generated from the wire cutters matched Petitioner's DNA profile in CODIS. (ECF 15-1 at 9-11).

At trial, OCME Criminalist Melissa Huyck testified about three OCME reports: the "First Report"[3] concerned testing and development of a DNA profile from the wire cutters; the "Second Report" concerned the development of a DNA profile of Petitioner from his November 2010 buccal swab; and the "Third Report," authored by Huyck, "documented the results of her comparison, in January 2013, of the DNA profiles obtained in the First and Second Reports." (ECF 15-1 at 11). Huyck concluded [in the Third Report and at trial] that [Petitioner] is the source of the DNA found on . . . the wire cutters." (ECF 15-1 at 11). Huyck was listed as an

---

[3] The Court will use the same naming convention for the OCME DNA reports as was used in Respondents' papers. (*See* ECF 15-1 at 10).

"Analyst" on the First Report and her initials appear on the Second Report at "Interpreting

Analyst." (ECF 15-1 at 10).

At trial, Huyck's testimony tied Petitioner to the DNA found on the wirecutters. On

direct, Huyck testified to the collection and processing of samples, the procedures used, and

the significance of matching profiles. (ECF 15-8 at 332-349, 365-377). Defense counsel did not

object to Huyck's testimony or qualifications but did cross-examine her on the possibility that

an unidentified burglar could have obtained and used Petitioner's gloves and deposited

Petitioner's DNA on the wire cutters. (ECF 15-8 at 381-389, 393-394). Counsel had the

opportunity to cross examine Huyck on the reliability of the collection and analysis of the DNA

samples, but chose not do so. The parties stipulated to Officer McReady's collection and

vouchering of Petitioner's buccal swab, which had been collected after his arrest for the 2009

robberies and before the 2013 burglary. (ECF 15-8 at 395). In closing, Petitioner's counsel

argued that Petitioner's DNA on the wire cutters did not lead to the inescapable conclusion that

Petitioner had committed the burglary, given the lack of fingerprints and any other evidence

tying Petitioner to the crime scene. (ECF 15-8 at 406 - 426).

### C.  Procedural History

In March 2014, Petitioner was convicted of second degree burglary and sentenced by

Justice Carruthers to 20 years to life. (ECF 15-1 at 12). On April 28, 2014, Petitioner pleaded

guilty before Justice Carruthers to all of the counts in the 2009 Indictment, and he was

sentenced to 25 years to life to run concurrently with the sentence imposed for the 2013

Indictment. (ECF 15-1 at 12-13).

On direct appeal, as relevant to this proceeding, Petitioner raised the following claims: a Sixth Amendment confrontation violation due to the introduction of DNA testing that Huyck did not perform; and insufficiency of the evidence. (ECF 15-1 at 13-14).

The Appellate Division rejected Petitioner's insufficiency of the evidence claim, finding that Petitioner's "identity as the burglar was strongly established by the match of his known DNA to the DNA found on [the] wire cutters." *People v. Rodriguez*, 153 A.D.3d 235, 237 (1st Dept. 2017). While the Appellate Division agreed that the confrontation clause claim was not preserved, two justices would have reversed "in the interest of justice" on the ground that failure to preserve the claim may have constituted ineffective assistance of counsel. [4] *Id.* at 254.

Ultimately, the Court of Appeals ruled that even assuming the challenge to the DNA testing was meritorious under *People v. John*, 27 N.Y. 3d 294, 297 (2016) (explaining scope of defendant's right to confront a witness under the Sixth Amendment when DNA evidence is introduced), counsel's failure to preserve that claim did not constitute ineffective assistance of counsel because Petitioner had failed to show that counsel's actions "could not have been grounded in a legitimate trial strategy." *People v. Rodriguez*, 31 N.Y.3d 1067, 1068 (2018).

In his federal habeas petition, Petitioner raises the same claims: a Sixth Amendment Confrontation Clause claim regarding Huyck's testimony, a Sixth Amendment ineffective assistance claim for counsel's failure to challenge Huyck's testimony at trial, and a claim that,

---

[4] The Appellate Division first found that Petitioner's Confrontation Clause claim was defaulted, but also issued an "alternative holding" denying the claim on its merits. *Rodriguez*, 153 A.D.3d at 238. Specifically, the Appellate Division found that: 1) the First and Second Reports were not testimonial; 2) the Third Report was testimonial; and 3) because Huyck authored the Third Report, testified at trial and was subject to cross-examination, Petitioner's confrontation rights were not violated. *Id.* at 240-47. In doing so, the Appellate Division specifically cited and analyzed *People v. John*, 27 N.Y. 3d 294, 297 (2016).

due to the insufficiency of the DNA evidence, Petitioner may withdraw his plea to the 2009

Indictment.

### III.     Analysis

#### A.  Standard of Review

A *habeas corpus* petition is not a vehicle to relitigate every issue previously determined

in state court. *Herrera v. Collins,* 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking

*habeas* relief under § 2254 must show by a preponderance of the evidence that he is "in

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). The Petitioner thus has the burden of proving, by a preponderance of the evidence,

that his rights have been violated. *See Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997).

A federal court may grant a writ of *habeas corpus* to a state prisoner where the state

court's adjudication of the petitioner's federal claim on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established federal law, as determined by the

Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law" or "if the state court confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to

[that of the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A decision is an

unreasonable application of clearly established federal law if a "state court identifies the

correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies

that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *accord Cullen v.*

*Pinholster*, 563 U.S. 170, 182 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (defining

"unreasonable application" to require more than clear error). Moreover, a "federal habeas

court may not issue the writ simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411;

*accord Lockyer*, 538 U.S. at 75.

The standard for relief under the Antiterrorism and Effective Death Penalty Act

("AEDPA") "is difficult to meet, because the purpose of AEDPA is to ensure that federal *habeas*

relief functions as a guard against extreme malfunctions in the state criminal justice systems,

and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 43 (2011) (internal

quotation marks omitted); *see Burt v. Titlow*, 571 U.S. 12, 16 (2013) ("AEDPA erects a

formidable barrier to federal *habeas* relief for prisoners whose claims have been adjudicated in

state court.").

> [C]learly established Federal law" for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of this Court's decisions." And an "unreasonable application of" those holdings must be "objectively unreasonable," not merely wrong; even "clear error" will not suffice. Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.
>
> *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal citations removed). "[R]eview

under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the

prisoner's claim on the merits." *Greene*, 565 U.S. at 38 (2011) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)).

### B.  DNA Evidence Claims (Grounds One and Two)

For purposes of this petition, Petitioner has sufficiently presented both the Confrontation Clause and ineffective assistance of counsel claims in state court. The Appellate Division found that Huyck's testimony regarding the DNA reports and her conclusion that the DNA obtained from the wire cutters matched that of Petitioner's buccal swab did not violate the Confrontation Clause. *People v. Rodriguez*, 153 A.D.3d 235, 239-40 (N.Y. App. Div., 2017) (conducting analysis under *John,* 27 N.Y. 3d at 305, *Crawford v. Washington*, 541 U.S. 36, 51 (2004) and its progeny, and *Williams v. Illinois*,567 U.S. 50, 83 (2012)). The Court of Appeals, in affirming the Appellate Division's decision, found that even if counsel had "failed to assert a meritorious Confrontation Clause challenge," such failure would not constitute ineffective assistance of counsel. *People v. Rodriguez*, 31 N.Y.3d 1067, 1068 (2018). In this case, the state courts properly identified the clearly-established Federal law, and applied it reasonably to the facts here, and thus habeas relief cannot be granted. 28 U.S.C. § 2254(d)(1).

### 1.     *Allowing Huyck's testimony did not violate the Confrontation Clause*

There was no Confrontation Clause violation in allowing Huyck's testimony. The Court refers to the thorough analysis by Judge Lehrburger in a recent similar case. *See Carter v. Miller*, 12-CV-2680 (ER) (RWL), 2022 WL 1446533 at *18 (S.D.N.Y., May 2, 2022) (analyzing development of Supreme Court and Second Circuit case law concerning DNA and other laboratory testing and Confrontation Clause claims); *see also Washington v. Griffin*, 876 F.3d 395, 403-404 (2d Cir. 2017) (affirming denial of habeas relief because state court's merits

determination that testimony of DNA witness did not violate Confrontation Clause where that witness "consulted the raw data, reached her own conclusions, and personally reviewed and compared the profile from the buccal swab to the profiles generated from the crime scene evidence"); *United States v. Boyd*, 686 F. Supp. 2d 382, 384-85 (S.D.N.Y. Mar. 1, 2010) (noting difference between DNA testing in preliminary stages which require "largely mechanical or ministerial tasks," and final stage of DNA comparison that "involved the type of analytical judgment" for which in-court testimony would be required to preserve right to confrontation).

> 2. *Counsel's failure to object to Huyck's testimony was not constitutionally ineffective assistance of counsel*

To prevail on his ineffective assistance of counsel claim, Petitioner must demonstrate that (a) his counsel's performance "fell below an objective standard of reasonableness," and (b) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). Under *Strickland,* there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Therefore, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). As the Second Circuit has noted, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001). The "purpose of the effective assistance guarantee of the Sixth Amendment is ... simply to ensure that criminal defendants receive a fair trial.... Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial

cannot be relied on as having produced a just result.'" *Cullen*, 563 U.S. at 189 (quoting

*Strickland*, 466 U.S. at 686, 689) (emphasis added) (citation and internal quotation omitted).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.
>
> *Strickland*, 466 U.S. at 689 (citation omitted).

Ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse'

or 'Monday morning quarterbacking' . . . Decisions by criminal defense counsel are often

choices among bad alternatives." *Mui v. United States*, 614 F.3d 50, 57 (2d Cir. 2010); *accord,*

*e.g.*, *Cullen*, 563 U.S. at 189; *Harrington*, 562 U.S. at 105 ("It is 'all too tempting' to 'second-

guess counsel's assistance after conviction or adverse sentence.'"). Petitioner's "burden is to

show that counsel made errors so serious that counsel was not functioning as the counsel

guaranteed to the defendant by the Sixth Amendment." *Id.* at 104 (internal quotations

omitted).

In Ground Two, Petitioner alleges, in conclusory fashion, that his counsel was

constitutionally ineffective for failing to object to Huyck's testimony. The New York Court of

Appeals had previously ruled that even if there were a meritorious Confrontation Clause

challenge to assert, that counsel's failure to do so was not constitutionally ineffective.

*Rodriguez*, 31 N.Y.3d at 1068. Accordingly, under the deferential standard of *Strickland* and

§ 2254(d)(1), Petitioner has not overcome the presumption that counsel's failure to object

might be considered sound trial strategy. Indeed, given the case law in this Circuit, had counsel

objected to Huyck's testimony, that objection would have been overruled,[5] because Huyck was

the proper witness for Petitioner to confront to challenge the DNA evidence. *John*, 27 N.Y. 3d at

309; *see Boyd*, 686 F. Supp. 2d at 383.

### C.   Petitioner cannot withdraw his guilty plea (Ground Three)

Ground Three, in which Petitioner seeks, without explanation, "to deem an atto[r]ney

ineffective for pursuing a course of action that would benefit the attorney's client," ECF 1 at 9.

may be an assertion that he should be allowed to withdraw his guilty plea to the 2009

Indictment because he was "told to do so [plead guilty] by the trial lawyer." (ECF 1 at 3). To the

extent Petitioner seeks withdrawal of his guilty plea as part of a remedy for the alleged

ineffective assistance and Confrontation Clause violations identified in Grounds One and Two,

the request fails because he is not entitled to habeas relief for either of these claims.

### 1.   *"Actual Innocence"*

Petitioner may be asserting a claim to habeas relief because he believes he would be

"actually innocent" if the DNA evidence were to be excluded. (*See* ECF 1 at 1). Such a claim

could be expressed either as a claim of actual innocence or insufficiency of the evidence. Under

either analysis, however, Petitioner is not entitled to habeas relief.

"[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway

through which a habeas petitioner must pass to have his otherwise barred constitutional claim

considered on the merits." *Herrera*, 506 U.S. at 404; *see McQuiggin v. Perkins*, 569 U.S. 383, 386

---

[5] Even if the objection were meritorious and sustained, the trial court would not have ordered wholesale exclusion of the DNA evidence; the prosecution could have presented for cross-examination the individuals who prepared and authored the First and Second Reports.

(2013); *Johnson v. Bellnier*, 508 F. App'x 23, 26 (2d Cir. 2013). Neither the Supreme Court nor the Court of Appeals for the Second Circuit has ever concluded that a *habeas* court can entertain a free-standing claim of actual innocence,[6] such as that asserted here. *Rivers v. Smith*, 13-CV-549 (NGG) (LB), 2015 WL 8489963, at *21 (E.D.N.Y., Dec. 8, 2015).

2.       *Ineffective Assistance of Counsel*

But even if Petitioner seeks in Ground Three only to withdraw his plea, either because his trial counsel was ineffective for recommending it to him, or because he would never have pleaded guilty to the 2009 Indictment had the DNA evidence been excluded at his trial, such a claim would fail under *Strickland*.

The *Strickland* standard also applies to ineffective assistance claims arising out of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "In the context of a guilty plea, the prejudice requirement 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Moore v. United States*, No. 00-CV-4560, 98-CR-833, 2001 WL 253432, at *11 (S.D.N.Y. Mar. 15, 2001) (Peck, M.J.) (quoting *Hill*, 474 U.S. at 59).

Counsel's advice to plead guilty was reasonable, and Petitioner has not pointed to any evidence to show prejudice arising from counsel's advice to plead guilty. Petitioner had already

---

[6] Even if the Court were to consider Petitioner's actual innocence claim on its merits, it would not be successful. This is because such a claim "must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (quoting *Schlup v. Delo,* 513 U.S. at 324; and *House v. Bell,* 547 U.S. at 538). Here, Petitioner has not presented any new evidence at all, let alone new evidence that could not have been discovered previously through due diligence.

been convicted after a jury trial where DNA evidence had conclusively linked him to the 2013

burglary, which had been committed while he was on pretrial release after being charged in the

2009 Indictment. Trial counsel had negotiated a concurrent sentence that would not have

resulted in Petitioner serving more time as a result of pleading guilty. Petitioner has not shown

any evidence that counsel's advice to plead guilty was constitutional error, and even if he had,

the concurrent sentence allays any possible prejudice arising from the guilty plea.

## IV.      Conclusion

For the foregoing reasons, Petitioner's *habeas* petition should be denied. Furthermore,

because Petitioner has not made a substantial showing of the denial of a constitutional right, as

required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

## V.      Objections

In accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), the parties shall have

fourteen (14) days (including weekends and holidays) from receipt of this Report to file written

objections. *See also* FED. R. CIV. P. 6 (allowing three (3) additional days for service by mail). A

party may respond to any objections within fourteen (14) days after being served. Such

objections, and any responses to objections, shall be filed with the Clerk of Court, *Pro Se* Intake

Unit, United States Courthouse, 500 Pearl Street, Room 200, New York, New York 10007. Any

requests for an extension of time for filing objections must be directed to Judge Schofield.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER

OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** (*See Thomas v. Arn*, 474 U.S. 140,

155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v.*

*Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.

1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983)).

The Clerk is respectfully requested to mail a copy of this Report and Recommendation to

Petitioner.


Respectfully submitted,


_s/ Ona T. Wang_

Dated: January 27, 2023                                                    **Ona T. Wang**
        New York, New York                                        United States Magistrate Judge